323 So.2d 105 (1975)
UNITED STATES FIDELITY & GUARANTY COMPANY
v.
ROB HOMES, INC.
Ruby PICARD
v.
UNITED STATES FIDELITY & GUARANTY COMPANY.
No. 48373.
Supreme Court of Mississippi.
December 8, 1975.
Watkins & Eager, Velia Ann Mayer, Jackson, for U.S.F. & G. Co.
Gillespie & Lenoir Gulfport, for Rob Homes and Picard.
Before PATTERSON, INZER and WALKER, JJ.
PATTERSON, Justice:
Ms. Ruby Picard and Rob Homes, Inc. sued the United States Fidelity & Guaranty Company for damages in the Circuit Court of the Second Judicial District of Harrison County. A jury verdict denied Ms. Picard damages and she appeals. A verdict of $71,912.50 was made in favor of Rob Homes, Inc., against United States Fidelity & Guaranty Company from which it appeals. We affirm.
Since 1941 Ms. Picard (hereinafter Picard) had been the proprietor of an apartment complex situated in Biloxi, Mississippi. In early 1969 she entered into discussions with Ray Gollott (hereinafter Gollott) concerning the purchase of this property by him, and to this end an oral agreement of purchase had been made. In August 1969 Hurricane Camille destroyed the apartment building on the property, engendering further discussion between Picard and Gollott relating to their agreement of purchase and sale. Both were desirous of constructing new apartments so that the sale by Picard could be consummated. However, Gollott was unable to obtain a Small Business Administration loan because he did not have title to the property before Camille. Picard was able to and did obtain a Small Business Administration loan to build a 12-unit apartment complex on the site. She agreed, upon completion of the complex, to sell the property and *106 building to Gollott and a contract for such sale was executed in December 1970.
Picard did not take an active part in the construction of the apartment building, leaving this phase of the transaction to Gollott. In January 1971 Gollott executed a contract with Rob Homes for the construction of an apartment building to be completed by July 30, 1971, for $87,000.
Construction was begun and Picard obtained a loan of $70,000 from the Hancock Bank for interim financing of the project. The building was not completed on July 30, 1971, necessitating an addendum to the contract in February 1972, with additional time granted to April 17, 1972, for completion. When this additional time had passed, Rob Homes had completed 85% of the building but discontinued construction work in May 1972.
In 1971 when Picard obtained the loan for interim financing of the apartment project, she was advised to obtain insurance upon the property and thereafter a builder's risk policy was obtained with Rob Homes being named as the insured. The policy was issued by the Mississippi Insurance Underwriters Association with United States Fidelity & Guaranty Company being the service insurer. In February 1972 Gollott endeavored to have Picard designated as an insured under the policy through the Watson-Lyons Insurance Agency. The agency forwarded this request to Mississippi Insurance Underwriters Association, but the request was denied because the application did not specify the interest of Picard in the property. She was not thereafter named as an insured since the agency, for some reason, notified the underwriters association to disregard the request it had made for Picard to be named as an insured.
During the course of construction Picard paid Rob Homes $59,499.18 interim payments as the work progressed. The apartment complex was destroyed by fire on June 26, 1972. At that time Rob Homes had completed 85% of the structure, but had abandoned the project. United States Fidelity & Guaranty Company (hereinafter U.S.F. & G.) was brought into this litigation since it had issued the builder's risk insurance policy to Rob Homes.
After Rob Homes ceased work on the apartment, Gollott endeavored its completion. The building was 95% finished at the time of the fire. Thereafter, U.S.F. & G. was advised of the loss and it authorized the General Adjustment Bureau to investigate the fire claim and to report the resultant damages. General Adjustment Bureau investigated and advised U.S.F. & G. that the fire damages approximated $71,962.50.
Thereafter, an agent of the General Adjustment Bureau submitted a proof of loss form to be signed by Rob Homes to establish its claim of $71,912.50. Rob Homes refused to sign the proof of loss form until it was granted a full release from liability under its construction contract with Gollott. The release was obtained from Picard and Gollott and Rob Homes signed the proof of loss form. U.S.F. & G. would not accept the proof of loss, contending that Picard was not a named insured in the policy and that the only loss incurred by Rob Homes, if anything, was $14,499.18, the difference between the contract price, the per cent of completion of the structure, and the amount it had been previously paid.
The real issue presented is whether the liability of U.S.F. & G. attaches at the time of the fire or whether it is subject to diminution by subsequent agreement of Picard and Gollott to release Rob Homes from further liability under the construction contract.
We are of the opinion that liability attached as of the date of the fire loss. Rob Homes' contract to construct the apartment was for a stipulated price and the fact that the nearly-completed apartment was destroyed by fire during the construction did not relieve it of its obligations *107 under the contract absent words to that effect in the agreement. In United States Fidelity & Guaranty Co. v. Parsons, 147 Miss. 335, 112 So. 469 (1927), we held:
... [T]he general rule is that where a house is destroyed by fire, and the contractor having agreed to furnish labor and material and construct a completed house for the owner, that he takes the risk of the incompleted house being destroyed by fire, unless he protects himself by expressly contracting that he shall not be held liable for an act of God, or other untoward circumstance, against which he is not willing to be bound.
The common-law rule is that where the duty is imposed on a party for performance, his nonperformance shall be excused if it be rendered by an act of God, but where by his contract the party engages to do an act, it is deemed to be his own folly and fault that he does not expressly provide against such contingencies and exempt himself in certain events. In the instance of an absolute and general contract, the performance is not excused by an inevitable incident or other contingency ... Destruction by fire would excuse the nonperformance of a duty created by law, but would not excuse a breach of that duty created by contract. The party must contract against such contingencies, or abide and suffer the loss entailed by failure to so contract as to relieve himself from liability.
(147 Miss. at 354-55, 112 So. at 472).
We ascertain from the contract and the above rule of law that Rob Homes' liability to Gollott and Picard was to furnish them a completed apartment building.
The appellant U.S.F. & G. contends, however, that the release of Rob Homes from this liability by Gollot and Picard had the effect of diminishing its liability under the builder's risk policy. In support of this position it cites the indemnity case of Tauriello v. Aetna Ins. Co., 14 N.J. Super. 530, 82 A.2d 226 (1951), wherein the insurance company issued a standard fire policy covering certain premises in Newark, New Jersey, in the amount of $10,000. One Crescenzi was the insured prior to his death, but thereafter title vested in the plaintiffs and the policy was endorsed accordingly. Prior to the death of Crescenzi the State had contracted to purchase the property from him for the sum of $30,500. Subsequent to the agreement of sale the building on the property was destroyed by fire, but despite this fact the property was conveyed to the State without decrease in the agreed purchase price prior to the fire. The New Jersey Court was of the opinion that the defendant insurance company was entitled to judgment. It held:
The general rule is that a contract for insurance against fire is ordinarily one of indemnity under which the insured is entitled to receive indemnity or to be reimbursed for any loss that he may have sustained and cannot recover if he has sustained no loss. See 45 C.J.S., Insurance, § 915, page 1009. In Draper v. Delaware State Grange Mutual Fire Insurance Co., 5 Boyce 143, 28 Del. 143, 91 A. 206, it was pointed out that a fire insurance policy is a contract not to insure the property against fire but to insure the owner against loss by fire, and that the insurance company can be called upon when, and only when, the insured has sustained a loss which under the terms of the policy calls for indemnification.
(82 A.2d at 227-8).
Numerous cases from other jurisdictions are cited to the same effect. We note, however, that Tauriello, supra, has been severely criticized in Wolf v. Home Ins. Co., 100 N.J. Super. 27, 241 A.2d 28 (1968), wherein another superior court was of the opinion that Tauriello would have been better decided had the court determined just what interest of the insured was protected by the policy in force at the time of the loss rather than considering the insurer's *108 liability by way of an indemnity for its loss. We are of the opinion that the argument advanced by the appellant favoring the indemnity cases is not applicable to the present facts.
The insurable interest of Rob Homes in the building under construction and the liability of U.S.F. & G. to it, in our opinion, vested at the date of the fire because at that time Rob Homes was bound by its contract to construct the building for $87,000 and was not, absent apt words in the contract, entitled to any further payments until the building was completed. Its liability remained unimpaired by the fire loss.
In Milwaukee Mechanics Ins. Co. v. Maples, 37 Ala.App. 74, 66 So.2d 159 (1953), the insured gave a 90-day option to Engel, an agent of Sears, Roebuck & Company, to purchase property for a price of $33,000. The agent gave notice on May 23, 1949, that he would exercise the option. On June 14, 1949, the building was damaged by fire. The parties to the option contract, the insured and Sears, Roebuck & Company, agreed to complete the sale on the terms that the insured reduce the purchase price by $1000 and that Sears, Roebuck would assign to the insured any rights that it might have had to the fire insurance proceeds. The transaction was completed in accord with this agreement and thereafter the Court of Appeals of Alabama rejected the insurance company's contention that the insured had suffered no financial loss other than the $1000 reduction in purchase price. In its opinion the Court stated:
At the time the policy was written and at the time of the loss, the appellee, as between appellee and appellant, insurance company, was, in law, the owner of the full insurable interest. The appellant's contract was to insure "to the extent of the actual cash value of the property at the time of the loss." The fact that the appellee later realized by sale to within $1,000 the amount she has agreed to sell the building for is no defense available to the appellant, who was an entire stranger to the dealings between appellee and the vendee. Appellant's liability must, under the contract, be measured by the fire damage at the time of the loss and not by fortuitous circumstances later befalling the insured and to which appellant was in no wise privy... .
37 Ala.App. at 85, 66 So.2d at 167.
See also National Fire Ins. Co. of Hartford, Conn. v. Kinney, 224 Ala. 586, 141 So. 350 (1932), as well as Board of Trustees et al. v. Cream City Mutual Ins. Co., 255 Minn. 347, 96 N.W.2d 690 (1959). We conclude that U.S.F. & G.'s liability must, under its contract, be measured by the fire damage at the time of the loss and not by fortuitous circumstances later befalling the insured in which the appellant was in no wise a part.
The other assignments of error by U.S.F. & G. are included within the above premise which we need not further discuss.
There appearing of record a stipulation between Picard, Rob Homes, the Hancock Bank and U.S.F. & G. that in the event the plaintiffs, or either of them, recover a verdict, that the monies therefrom shall be disbursed to the plaintiffs, or either of them, and the bank as their interest might appear, we need proceed no further than to affirm the judgment of the court below for disbursement in accord with the parties' stipulation.
Affirmed.
RODGERS, P.J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.
GILLESPIE, C.J., took no part.