468 So.2d 868 (1985)
TALMAN FEDERAL SAVINGS & LOAN ASSOCIATION
v.
AMERICAN STATES INSURANCE COMPANY and William H. Roberson.
No. 54690.
Supreme Court of Mississippi.
May 1, 1985.
Robert H. Weaver, Richard D. Hendricks, Watkins, Ludlam & Stennis, Jackson, for appellant.
Joe W. Hobbs, Hobbs & Brand, Jackson, T.H. Freeland, IV, Freeland & Gafford, Oxford, Donald C. Woods, Keyes, Moss & Piazza, Jackson, for appellees.
Before PATTERSON, HAWKINS and PRATHER, JJ.
HAWKINS, Justice, for the Court:
Talman Federal Savings & Loan Association (Talman) appeals from an adverse decree of the Chancery Court of the First Judicial District of Hinds County in favor *869 of American States Insurance Company (American States) and William H. Roberson.
The chancellor held American States was obligated to pay Talman the amount due it under a note and deed of trust as of the date of a fire which destroyed an insured house, and that upon such payment Talman would be obligated to assign all its rights to the note and deed of trust to American States.
The chancellor also held that Roberson was entitled to fee simple title to the realty because he had rebuilt the house following a contract for sale between himself and the owners.
Talman has appealed, arguing that the chancellor was in error in restricting the amount due it from the insurance carrier as of the date of the fire; and making no allowance for subsequently accruing interest and attorney's fees, as provided in the deed of trust.
American States has cross-appealed alleging that in view of the house being restored, Talman suffered no loss. We find no merit in the cross-appeal and reverse and render as to it.
We also find the chancellor erred in restricting Talman's recovery, under the facts of this case, to all sums due it under the note and deed of trust as of the date of the fire.
We further find that Roberson's interest in or title to this property is subordinate to all rights in the holder of the note and deed of trust.
We remand on the direct appeal for proceedings consistent with this opinion.

FACTS
On November 19, 1976, Bernard A. Bast and Kathleen Bast executed a purchase money note and deed of trust covering a house and lot in Jackson in favor of Fidelity Mortgage Company, the deed of trust being filed of public record on November 24, 1976, and duly recorded on the deed records of the First Judicial District of Hinds County. This note and deed of trust were assigned to Talman on December 8, 1976, and the assignment filed of public record on February 2, 1977, and also recorded on the deed records.
On December 9, 1977, this property was conveyed by warranty deed from the Basts to Edwin Valle and his wife Johnnie R. Valle expressly subject to the deed of trust, which was assumed by the grantees. The promissory note, for which the deed of trust was security, was in the principal sum of $31,000 and provided for monthly installments of $260.16, payable on the first of every month, beginning January 1, 1977, and ending December 1, 2001. The Valles paid the monthly payments on this note through September, 1980.
On June 29, 1980, American States issued a fire insurance policy insuring the house for the maximum sum of $55,000. Talman was named as the mortgagee beneficiary in the policy. The policy covered a period from June 29, 1980, to June 29, 1983.
On April 9, 1981, when the policy was in force, the house was substantially destroyed by fire.
There was an investigation by the Jackson Fire Department, following which Valle was arrested and charged with arson. Valle made a claim on June 4, 1981, with American States for the fire loss. On June 9, 1981, American States, as authorized by the policy, examined Valle and Mrs. Valle under oath and refused to pay the claim.
American States made inquiry of Talman regarding the pay-off on the note and deed of trust, and on July 8, 1981, Talman wrote American States the amount then due, namely $32,431.31. American States refused to pay Talman.
Talman had been making demand on the Valles for payment on the note and deed of trust, and was preparing to institute foreclosure proceedings on August 14, 1981, against the realty. On August 11, 1981, the Valles filed a Chapter 11 Petition for Voluntary Bankruptcy in the United States Bankruptcy Court, Jackson division.
On October 28, 1981, the Valles filed a Bill of Complaint in the First Judicial District *870 of Hinds County, naming as defendants American States and Talman. The Bill of Complaint acknowledges the indebtedness of Talman and claims American States wrongfully refused to pay the insurance claim for the fire loss. The prayer for relief asks for judgment against American States for a fire loss of $53,000, and that Talman be enjoined from foreclosing until such time as the complainants are accorded a reasonable time to repair the damages.
Talman answered on February 2, 1982, acknowledging the debt, that foreclosure proceedings were in progress when the bankruptcy petition was filed, and alleging it was entitled to all indebtedness and interest under the note and deed of trust as well as reasonable attorney's fees of twenty-five percent of the amount in controversy. Talman made a cross-bill against the Valles alleging that in event the court determined the Valles were entitled to recovery that the judgment be jointly in favor of the Valles and Talman; also, in the event the court found the Valles were not entitled to judgment that the court render judgment in favor of Talman. Talman also alleged that in such latter event, Talman would be entitled to foreclose and proceed against the Valles for any indebtedness remaining after receipt of the insurance proceeds.
Talman also made a cross-bill against American States for recovery under the policy as mortgagee, for all amounts due under the note and deed of trust, including interest, and an attorney's fee of twenty-five percent of the amount of the decree.
The cause was set for trial on September 13, 1982, and on September 1, 1982, American States filed an answer to Talman's cross-bill. American States admitted it had refused to pay Talman "after it learned that the insured dwelling has been fully restored to a condition better than it was in prior to the fire," and that Talman's security "has likewise been fully restored and there being no loss or damages within the meaning of the policy ..."
On September 10, 1982, Roberson filed a motion to intervene in the action, which was sustained during trial. Attached to the motion were an affidavit and petition. The affidavit alleged Roberson entered into a contract for sale of the realty on December 24, 1981, deposited $3,000 in cash as earnest money, with an obligation to pay the Valles the $19,000 balance of the purchase price over a period of twelve years. The affidavit also alleged Roberson had invested approximately $45,000 in materials and services restoring the property.
Roberson's petition likewise alleges the $45,000 investment in materials and services, that it was done in good faith and based upon a representation from Valle that fee simple title would vest in him within a year from date of the contract; that the Valles and Talman were aware he was restoring the property, and that Talman advanced no monies to him.
The petition further alleges Roberson has an "equitable lien" in the amount of the goods and services used in restoring the property, and the court should adjudicate the position of Roberson in respect to the deed of trust held by Talman. Also, that in event of judgment against American States, Roberson should be included with the Valles and Talman in accordance with their interests; and if judgment rendered only in favor of Talman against American States, that American States became thereby subrogated under the deed of trust, that Roberson's lien be adjudged superior to American States as subrogee.
The contract for sale, signed by the Valles and Roberson on December 24, 1981, was on a Valle letterhead form. It first gives the description and address of the realty. It states the total purchase price of $22,000 of which $3,000 is paid in cash, and the purchaser to obtain a twelve-year loan for the balance. Under the paragraph headed "OTHER PROVISIONS:" is written the following:
Seller will finance $19,000 $ 13% for 12 years.
Payments of $261.18 will start 30 days from the date of the loan closing.
Seller will guaranty clear title to this property within one year of this contract.
*871 At trial American States vigorously contested the Bill of Complaint. This was Valle's fourth fire loss for which he had made a claim against an insurance company; on April 9, 1981, he was insolvent. American States offered abundant evidence to show the fire was of incendiary origin. While Valle denied setting the house on fire, as did one Ronnie McGee, who was helping him that day, they admitted leaving two containers of gasoline in the house when they left the afternoon of the fire. Valle locked the house before leaving. The house was vacant, had serious drainage problems, and needed repairs to its foundations.
Roberson, a general contractor with about fourteen years' experience constructing houses, and who bought and sold several houses, testified he learned about the house from a friend. He contacted Valle and entered into a contract of sale.
He claimed he had done $42,390.15 work in restoring the house. He furnished no written instruments or documents of any kind supporting this figure. He stated he and his sons had done all the labor, and he had contracted the labor to "his boys." He said he paid them in cash, and that they used some new and some old materials.
According to Roberson they went to work about a month after he and Valle contracted, and the work was done on a part-time basis. At the time of the trial, he was still working on the house, but was almost finished.
Roberson said in July, 1982, a man named John Rickner with the mortgage company came out to the house. At that time he was fifty to sixty percent through with his work. Roberson testified Rickner asked him if he were the one working on the house, and if he owned the house, to which he replied affirmatively.
Although Roberson was aware of the need to get a title certificate on realty, he did not attempt to have the title checked on this property. He testified Valle told him he could not give him a deed at the time of contract.
The chancellor held the Valles were not entitled to any recovery because Valle had either burned or caused the house to be burned; and further Valle had increased the hazard by carrying gasoline on the premises.
The final decree denied recovery to the Valles. It rendered judgment in favor of Talman against American States in the amount of $29,487.26 plus interest, taxes and insurance premiums it had paid to April 9, 1981, the date of the fire, and provided that upon payment of this sum American States would be entitled to a full assignment of the note and deed of trust.
The decree found that Roberson had in good faith invested $42,390.25 in the property and he was entitled to fee simple title to the property, subject to the note and deed of trust.
The decree also provided that "fee simple title absolute is hereby conveyed to William H. Roberson" in the realty; and the purchase contract was declared void and of no effect.
The decree directed Valle to refund the $3,000 to Roberson, and assessed all costs against the Valles.
The Valles have not appealed, and there is no contention the chancellor erred in any finding as to liability concerning them.
Talman has appealed, alleging it is entitled to be paid all interest and any other expenses it has paid to protect its property until the date of payment by American States, plus reasonable attorney's fees, and that the chancellor erred in restricting Talman's claim against American States to the date of the fire. It further argues it should not be required to make a full assignment of the note and deed of trust without being fully paid all sums due it by American States.
American States has cross-appealed, claiming Talman suffered no loss because of the house being rebuilt.
Roberson has filed a brief, asserting the chancellor had jurisdiction, despite the *872 bankruptcy proceedings to grant him the relief awarded.[1]

LAW
The American States policy provides:
Mortgage Clause (with Full Contribution  N.Y. Standard)  (This entire clause is void unless name of mortgagee or trustee is inserted on the first page of this policy in space provided under this caption)  Loss or damage, if any, under this policy, (ON BUILDINGS) shall be payable to the mortgagee (or trustee), named in this policy, as interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy, and in case the mortgagor or owner shall neglect to pay any premium due under this policy the mortgagee (or trustee) shall, on demand, pay the same;
* * * * * *
Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage, and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his, her or their claim.[2]
On April 9, 1981, American States had a fire insurance policy in the face amount of $55,000 covering the house. The amount of the indebtedness due Talman was considerably less than the insurance coverage. Following the fire loss, under settled law there was an independent contractual obligation on the part of American States to pay Talman the amount of the debt. In the absence of wrongdoing by Valle, American States would have owed the owners the remainder of the loss. Highlands Insurance Co. v. McLaughlin, 387 So.2d 118 (Miss. 1980); and Hennessey v. Helgason, 168 Miss. 834, 151 So. 724 (1934). It is just as clear under the insurance policy and well settled law that the wrongdoing by Valle in no way diminished the obligation American States had to Talman. *873 See: Weems v. American Security Insurance Co., 450 So.2d 431 (Miss. 1984), p. 436, and cases cited.
When the house burned on April 9, 1981, American States knew its policy covered Talman as mortgagee. Some three months later it inquired about the pay-off as to Talman. When Talman gave American States the pay-off amount on July 9, 1981, American States simply refused to pay. This continued throughout the year. When the Valles sued American States in October, 1981, the company still refused to pay Talman. On February 2, 1982, Talman filed a cross-bill against American States under the policy, which American States waited seven months to answer (two weeks before trial), in September, 1982. The answer of American States sought to take advantage of the work of a third party, Roberson, in restoring the property over a year after the fire loss.
Under the insurance policy and settled law there simply was no basis in this record for American States to refuse to pay Talman.
Had American States paid Talman, it would have been subrogated to all Talman's rights, and also entitled to an assignment to it by Talman of the note and deed of trust. Following this assignment American States could have proceeded against the property and the Valles.
Instead, it required Talman to institute foreclosure proceedings, go to Bankruptcy Court, and finally to the Chancery Court to protect its deed of trust and its interest in the property. In doing so Talman was also protecting American States, because American States's only hope to recover any sum from payment under the policy is as subrogee or assignee, or both, of the deed of trust.
Therefore, the question is whether American States should be required to pay the interest accrued under the note and deed of trust to the day of payment, as well as reasonable attorney's fees it caused Talman to incur in protecting its interest in the deed of trust, all as specifically provided for in the deed of trust.[3]
On appeal American States concedes that if it is liable under the policy, it owes interest to the date of payment. (See p. 7, American States's brief)
What about the attorney's fees Talman has had to incur in protecting the rights of the holder of the deed of trust? Attorney's fees are specifically provided for in the deed of trust. Talman incurred these expenditures in protecting the very right American States as subrogee/assignee will eventually enjoy. It would be unconscionable not to require American States to pay a reasonable fee for such services.
The chancellor erred, therefore, in limiting recovery to the date of the fire. It will be necessary to remand this case for determination by the chancellor of the amount presently due, including all sums expended to protect the property and interest thereon, and to determine a reasonable attorney's fee as provided in the deed of trust.

THE CROSS-APPEAL
But, American States ingeniously if not disingenuously argues in a cross-appeal, there was no "loss." Roberson rebuilt the house.
An examination of the insurance contract exposes the attenuated reasoning of American States. The insurance policy states in pertinent parts:
The insured shall give immediate written notice to this Company of any loss, protect the property from further damage ... put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property showing in detail quantities, costs, *874 actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, ... stating ... the time and origin of the loss ... and the amount of the loss. ...
* * * * * *
The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided. [Emphasis added]
Having repeatedly stated in its policy that the loss envisioned in its contract with the insured is the date of the event on which the claim is made, American States now argues the "loss" is to be determined by events transpiring over a year after the fire on April 9, 1981.
American States asserts we have the option of adopting one of two "rules," the "New York Rule," or the "Wisconsin Rule." Under the latter rule, courts can consider developments transpiring subsequent to the casualty in determining whether there was a "loss."
In U.S. Fidelity & Guaranty Co. v. Rob Homes, Inc., 323 So.2d 105 (Miss. 1975), to which American States in its brief gives a courteous nod but no more, and a case in which the insurance carrier could arouse some sympathy in arguing that events transpiring subsequent to the fire diminished an insured contractor's loss, we nevertheless held: "Appellant's liability must, under the contract, be measured by the fire damage at the time of the loss and not by fortuitous circumstances later befalling the insured and to which appellant was in no wise privy." 323 So.2d 108.
Without more ado, it would thus appear this Court has already rejected the Wisconsin Rule, albeit Rob Homes did not deal with a claim by a mortgagee.
The decision of this Court in Rob Homes is the overwhelming weight of authority on the time when the loss is to be determined.
Walter v. Marine Office of America, 537 F.2d 89 (5th Cir.1976), involved a severely damaged boat which the owner repaired (not a third party suing to be recompensed as in this case). The Court of Appeals's language is significant, pp. 97-98:
Mortgagee Recovers Despite Repairs
[9] As discussed earlier, Owner paid for all the repairs and either paid or incurred the cost of all the salvage efforts. For the purposes of this case MARY ANN was completely restored to her former condition. In a physical-operational sense, therefore, the Mortgagee had not, did not, would not suffer any diminution of its security. The question arises then whether, under the standard union mortgage clauses with loss payable solely to the Mortgagee, underwriters (Penn and Lloyd's) are liable to Mortgagee for the dollar amount of the loss sustained by Owner. The answer is yes.
This is controlled by Louisiana law. Although the Erie beacon may be a little dim, it is sufficiently bright for us to conclude that Louisiana follows, and would do so here, the generally accepted rule.
The leading case is Savarese v. Ohio Farmers' Insurance Company, 1932, 260 N.Y. 45, 182 N.E. 665. There the issue was whether repair of the premises by the mortgagor after a fire prevented a mortgagee from recovering the insurance under the mortgage clause. The New York Court of Appeals held that the act of the owner in making repairs was not in behalf of the insurance company or as its agent, and accordingly did not affect the duty of the insurance company to make payment under the mortgagee insurance.
The opinion is an excellent analysis of why the result which, as the court put it, at first blush seems wrong is correct. The mortgagee insurance is for these purposes an independent contract between *875 insurer and mortgagee. The loss, if covered by the terms of the policy, becomes due on the happening of the event whether in fact the mortgagee has or will suffer an ultimate loss of security. The insurer cannot, in effect, demand that its Assured, the Mortgagee, first exhaust remaining security before claiming on the policy. Nor must the Mortgagee wait until it is determined whether or to what extent the mortgagor plans to or will restore the property.
This is the view of recognized insurance commentators as well as those on mortgages.
[Footnotes omitted]
See also: Couch on Insurance (2nd ed.), §§ 29.74, 29.76, 42.730 and cases cited thereunder; 45 C.J.S. Insurance, § 919, p. 1026, and cases cited thereunder.
Finally, there is a serious doubt American States's defense would wash in the few jurisdictions which supposedly adhere to the Wisconsin rubric. American States in its brief cites Ramsdell v. Insurance Co. of North America, 197 Wis. 136, 221 N.W. 654 (1928), the banner case; Beman v. Springfield Fire & Marine Insurance Co., 303 Ill. App. 554, 25 N.E.2d 603 (1940); Glens Falls Insurance Co. v. Sterling, 219 Md. 217, 148 A.2d 453 (1959); and McKay v. Consolidated American Insurance Co., 149 Ga. App. 691, 256 S.E.2d 93 (1979).
In each of these cases recovery by the plaintiff insureds would have smacked of unjust enrichment. Talman will not be unjustly enriched by American States fulfilling its contract. Following full payment of all sums due Talman under its deed of trust including attorney's fees, American States can become subrogated to Talman's rights, be entitled to a full assignment of the note and deed of trust, and proceed against the security.
It follows this case must be reversed and remanded to the Chancery Court for a determination of all sums presently due Talman under the deed of trust, and a reasonable attorney's fee to Talman incurred by it in protecting its security, and judgment accordingly; upon the payment of which American States will be entitled to a full assignment of the note and deed of trust.
While it is clear Roberson's title to this property is subordinate and subject to the right of Talman under the note and deed of trust, we make no determination of whether in equity American States as subrogee and assignee is entitled to recover all the attorney's fees assessed by the chancellor in favor of Talman. As an equitable principle, we leave for the determination of the chancellor upon remand the amount of attorney's fees American States should be entitled to recoup from that paid Talman. From this record, it is clear a major portion of these expenses could have easily been avoided by American States by fulfilling its clear contractual obligation.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., not participating.
NOTES
[1] In oral argument the parties stated the Valles bankruptcy proceeding was terminated November 10, 1983.
[2] These provisions in the policy are in conformity with Miss. Code Ann. § 83-13-9 (1972), providing in pertinent part:

§ 83-13-9. Mortgage clause.
Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:
Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as ____ mortgagee (or trustee), as ____ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, ... . Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of ____ claim.
[3] Paragraph 18 of the deed of trust sets forth the remedies available to the Lender following a breach by the Borrower, and provides that the Lender may pursue "any other remedies permitted by applicable law." The concluding sentence of the first part thereof states:

Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees.