**Annell SAUCIER,**
**Plaintiff/Counter–Defendant,**

v.

**UNITED STATES FIDELITY AND**
**GUARANTY COMPANY,**
**Defendant/Counter–Plaintiff.**

**Civ. A. No. S89–0031(G).**

United States District Court,
S.D. Mississippi, S.D.

Jan. 23, 1991.

David C. Frazier, Pascagoula, Miss., for plaintiff/counter-defendant.

Richard T. Lawrence, Jackson, Miss., for defendant/counter-plaintiff.

OPINION

GEX, District Judge.

The plaintiff, Annell Saucier, filed the instant declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 seeking a declaration that she was not required to submit to an examination under oath regarding her claim for fire insurance proceeds. The defendant, United States Fidelity and Guaranty Company [USF & G], now moves for summary judgment. After due consideration of the evidence of record and the applicable law, this Court finds that the motion is well-taken and should be sustained.

## Statement of Facts

USF & G issued a homeowners insurance policy numbered 1NG1–4251145 to the plaintiff with an inception date of May 29, 1987, and an expiration date of May 29, 1988, which insured the plaintiff's residence located at 18342 Highway 49, Route 1, Saucier, Mississippi. On May 10, 1988, a fire completely destroyed the insured premises. By letter dated June 9, 1988, counsel for USF & G advised the insured that she was required to submit to an examination under oath at 1:30 P.M. on June 21, 1988 in regard to her claim for the fire loss occurring on May 10, 1988. Via telephone call on June 13, 1988, counsel for the plaintiff advised USF & G's counsel that the plaintiff would not submit to an examination under oath on June 21, 1988 because she was a suspect with respect to the possible arson of her home. Counsel for USF & G demanded the examination under oath.

On July 12, 1988 counsel for USF & G received a sworn statement in a proof of loss dated July 9, 1988, which was submitted by Annell Saucier. By letter dated July 13, 1988, counsel for USF & G acknowledged receipt of the proof of loss but indicated that the insurer was holding in abeyance the making of a decision on the proof of loss until Annell Saucier had given a statement under oath and produced certain documents. By letter dated July 28, 1988, counsel for the plaintiff confirmed that his client had been indicted in federal district court on July 19, 1988 and notified counsel for USF & G that the plaintiff would not be submitting to an examination under oath.

A series of letters were dispatched between counsel for the parties wherein plaintiff's counsel disputed the requirement that plaintiff submit to an examination under oath while she was under indictment for arson. Counsel for defendant continued to assure counsel for the plaintiff that the law, indeed, still allowed said examination even in the face of an indictment.

By letter dated August 12, 1988, counsel for USF & G transmitted USF & G's draft in the amount of $58,119.37 to the mortgagee named in the policy, Hancock Bank, pursuant to Miss.Code Ann. § 83–13–9 (1972) and the mortgage clause in the policy. Under the authority of § 83–13–9 (1972), Hancock Bank assigned to USF & G all of its rights, title and interest in the notes and deeds of trust securing the property which is the subject of this litigation.

Eventually, the plaintiff filed the instant complaint for declaratory judgment in which she asked the Court to declare the respective rights of the parties pursuant to the terms of the policy of insurance in question, and in so doing, declare that the plaintiff was not required to submit to an examination under oath as requested by the defendant until such time as any and all criminal matters pending against the plaintiff had been resolved. Thereafter, the defendant filed its answer and counterclaim for a declaration whether USF & G were liable to Saucier for the fire loss and whether USF & G were subrogated to the rights of Hancock Bank.

Subsequently, Annell Saucier was convicted of arson and judgment was entered on the arson charge. On March 13, 1990, the Fifth Circuit denied Annell Saucier's appeal of the arson conviction. In light of this conviction, the defendants now move for summary judgment on the complaint and counterclaim.

## Conclusions of Law

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). The moving party initially carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and by his own affidavits, or by the "depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for

trial." Fed.R.Civ.P. 56(e); *Thomas v. Harris County,* 784 F.2d 648 (5th Cir.1986). If the opponent fails in his duty, summary judgment is implicated.[1]

█ In the case *sub judice,* the defendant asks this Court to determine whether Saucier was legally required to attend a noticed examination under oath. Mississippi law is clear that a policy is rendered void where an insured either fails to submit to an examination under oath or refuses to answer material questions during an examination under oath. *Taylor v. Fireman's Fund Ins. Co.,* 306 So.2d 638 (Miss.1974). The Mississippi Supreme Court has stated:

> The clauses in the policy relied on by State Farm are common to insurance policies, and have been dealt with by this court on many occasions. In all of these cases the clauses authorizing insurers to conduct investigations under oath were found to be reasonable and valid. This Court also found that failure to submit to such an examination, under circumstances such as those present in the case at bar, would preclude coverage under the policies as a matter of law. [citations omitted].

*Allison v. State Farm Fire & Cas. Co.,* 543 So.2d 661, 663 (Miss.1989).

█ It is equally clear that the unfortunate fact of Saucier's indictment did not work to relieve her of her contractual obligations. *Pervis v. State Farm Fire & Cas. Co.,* 901 F.2d 944 (11th Cir.1990), *cert. denied* —— U.S. ——, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990), *Kisting v. Westchester Fire Ins. Co.,* 290 F.Supp. 141 (W.D.Wis. 1968), *aff'd* 416 F.2d 967 (7th Cir.1969). One court has reasoned as follows:

> The compulsion secured against by the constitution is a compulsion exercised by the state in its sovereign capacity in some manner known to the law. Constitutional immunity has no application to a private examination arising out of a contractual relationship. The examination to which appellants demanded respondent should submit was an extrajudicial proceeding, not authorized by any constitutional or statutory provision, but purely by virtue of a contract between the parties. To bring a case within the constitutional immunity, it must appear that compulsion was sought under public process of some kind. This being so, respondent's refusal to undergo examination and produce his books and papers acquires no sanctity because he urged his constitutional right not to be compelled to be a witness against himself. The demand was made upon him by virtue of the stipulation in the contract, and by the stipulation alone must his refusal be judged. The stipulation constituted a promissory warranty under which appellants had the right to demand compliance by respondent "as often as required," and the performance of such stipulation was a condition precedent to any right of action.

*Hickman v. London Assurance Corp.,* 184 Cal. 524, 195 P. 45, 49 (1920). *See also Pervis, supra.*

Consequently, this Court finds that the plaintiff failed to submit to an examination under oath, and that failure was not legally excused. Under the law of Mississippi, then, the insurance policy at issue is void, and the defendant is entitled to summary judgment.

█ Alternatively, this Court finds that the doctrine of collateral estoppel works in favor of granting summary judgment to the defendant. The law is well established that it is proper for a court to take judicial notice of its own records and proceedings. *United States v. Verlinsky,* 459 F.2d 1085, 1089 (5th Cir.1972). The plaintiff in the instant case was convicted of arson in this court. Consequently, the issue of her culpability in the burning of her house has previously been determined.

Although this is a diversity action, the United States Court of Appeals for the Fifth Circuit has held that when considering the doctrine of collateral estoppel, fed-

---

1. The plaintiff has not responded to the instant motion. Although the Court has considered the motion on its merits, there can be no dispute of fact since the plaintiff has failed in her burden of submitting evidence.

eral law should be applied when a party seeks to estop a claim from being raised in a diversity action brought in federal court on the basis of an earlier determination made in a federal court sitting pursuant to its diversity jurisdiction. *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860, 862 (5th Cir.1985); *Stovall v. Price Waterhouse Co.,* 652 F.2d 537, 540–541 (5th Cir. 1981).

■ Under federal common law, the party asserting collateral estoppel must show the following three elements:

(1) That the issue to be precluded is identical to the one involved in the prior litigation involving the party against whom estoppel is asserted;

(2) That the issue was actually litigated and determined adversely to that party in the prior litigation; and,

(3) That the determination of the issue was a critical and necessary part of the judgment in that prior action.

*Nations v. Sun Oil Co.,* 695 F.2d 933, 938 (5th Cir.1983). In the instant case, there are no disputes of fact regarding the application of each of the three factors to the issue at hand. Consequently, the defendant is entitled to summary judgment since the issue has previously been determined by this Court.

■ Finally, as part of its counterclaim, USF & G sought a declaratory judgment that it was subrogated to all rights of the mortgagee, Hancock Bank. Under Miss. Code Ann. § 83–13–9 (1972) wrongdoing by the insured does not relieve the insurer of its obligation to pay the mortgagee. *Talman Federal Savings & Loan Assn. v. American States Ins. Co.,* 468 So.2d 868, 872–73 (Miss.1985). It is also clear that an insurer is entitled to be subrogated to the rights of a mortgagee against the insured mortgagor where liability is denied by the insurer. *Great American Ins. Co. v. Smith,* 252 Miss. 62, 172 So.2d 558 (1965). Therefore, this Court finds that there is no dispute of fact, and the defendant USF & G is entitled to summary judgment adjudicating its subrogation to the rights of Hancock Bank.

*Conclusion*

For the reasons stated above, this Court finds that the defendant is entitled to summary judgment on the complaint of the plaintiff and upon its own counterclaim.

Counsel for defendant shall submit an order in conformity with the foregoing Memorandum Opinion within ten (10) days from the date of entry hereof.