Mrs. Martha Newton Law et al., Appellants,

*v.*

Morris R. Dewoskin, d/b/a M.R. Dewoskin & Company,
Appellee.

447 S.W.2d 361.

(*Knoxville*, September Term, 1969.)

Opinion filed November 14, 1969.

CHAMBLISS, BAHNER & CRAWFORD, Chattanooga, for appellants.

MORGAN & GARNER and ALSON R. KEMP, JR., Chattanooga, for appellee.

MR. JUSTICE CRESON, delivered the opinion of the Court.

Complainants below appeal to this Court from a decree of the Chancery Court, Part II, of Hamilton County, which sustained a demurrer filed by Morris R. Dewoskin and dismissed the original bill.

Hereinafter, reference will be made to the parties as they appeared in the trial court; that is, Mrs. Martha

Newton Law, et al. as complainants, and Morris R. Dewoskin as defendant.

On October 8, 1968, complainants filed an original bill in the Chancery Court of Hamilton County. The bill alleged that, on November 1, 1955, Park Hotel Company, a corporation, conveyed certain real property, consisting of land and a hotel building, in Chattanooga, Tennessee, to defendant Dewoskin and Seymour H. Logan deceased. Complainants are successors in interest to said Park Hotel Company.

The original bill sought recovery from defendant (1) for fire insurance proceeds which complainants alleged were illegally "converted", rather than applied to repair of the hotel; and (2) for unpaid State, County and City property taxes which defendant had permitted to become delinquent. The material allegations of the original bill are as follows:

The consideration for the purchase of the hotel was an installment note in the amount of $135,000, plus interest. It should be noted at this point, however, that the note contained an exculpatory final clause which expressly excluded the creation of any personal liability on the part of the defendant. It further provided that the legal holder of the note agreed to look solely to the premises conveyed for payment of any and all indebtedness and interest evidenced by said note. This note was secured by deed of trust, which fixed liability for taxes upon the mortgagor.

The defendant remained in possession of the property from November 1, 1955, until March 19, 1968, at which time complainants foreclosed on the mortgage. During that time no payments were made on the principal and

approximately $15,000 in unpaid interest had accrued. During 1965, 1966, and 1967, State, County and City property taxes of approximately $19,000 had matured and become delinquent. In March of 1967, a fire occurred on the hotel premises, resulting in some damage. Since the insurance policy contained a standard loss payable clause in favor of complainants, a check from the insurance company was made payable, jointly, to the defendant and American National Bank & Trust Company, trustee for complainants.

It was alleged that defendant's agent represented to the bank that the insurance funds were to be used for the exclusive purpose of repairing the fire damage. Complainants further allege that, relying upon this representation, the bank endorsed the check and entrusted it to defendant's agent; that defendant applied only a fraction of the funds to such repairs, and illegally "converted" the remainder thereof.

On March 19, 1968, complainants foreclosed on the mortgage. At the foreclosure sale, the property was bid in by the trustee for the principal amount due of $135,000. At that time, the actual value of the property was estimated to be from $80,000 to $100,000.

As stated above, the original bill was filed on October 8, 1968. On December 16, 1968, defendant filed a demurrer to the original bill. Grounds for the demurrer were that the bill failed to show the amount of complainants' interest in the property, the sale of which provides the basis for the suit, and that the complainants' interest, if any, is not still well protected. The demurrer was sustained by the Chancellor, and complainants were given fifteen days to amend their original bill.

Two subsequent amendments were made by complainants. On March 10, 1969, defendant filed his second demurrer, and for grounds alleged (1) that this action sounds in waste, yet complainants have suffered no injury, since at the foreclosure sale the property was bought for the principal amount due, (2) that the deed of trust gives complainants a reversionary interest only in the amount of $135,000, which amount was received at the foreclosure sale, (3) that complainants are estopped from bringing this suit, having allowed and even participated in the actions of which they complain, and (4) that complainants have no standing to sue for waste after having foreclosed on the mortgage.

On April 30, 1969, after arguments of counsel were heard, the Chancellor entered a final decree sustaining defendant's demurrer and dismissing complainants' original bill. The Chancellor's finding was that "the Court is of the opinion that the demurrer is good and sufficient, since the complainants or their assignor, having received at foreclosure all of the principal sum owing to them, have so allowed, participated in, and condoned the actions of which they complain, that for the Court now to allow them to recover additional monies would be inequitable and unjust."

An appeal was prayed and ultimately perfected to this Court. Two assignments of error have been filed, as follows:

"1. The Court erred in sustaining the Demurrer, the complainants having stated a cause of action for the wrongful conversion of insurance proceeds belonging to them.

2. The court erred in sustaining the Demurrer, the complainants having stated a cause of action for

recovery of the unpaid taxes which the defendant covenanted to pay.''

In support of their first assignment of error, complainants argue that where insurance is taken out by the mortgagor for the benefit of mortgagee, the mortgagee has a prior or superior right to the proceeds of the policy. It is urged that the case of *Loftis v. Stuyvesant Insurance Company* (1965), 54 Tenn.App. 371, 390 S.W.2d 722 upholds the proposition that the rights of the complainants to the insurance proceeds accrued and were fixed as of the date of the loss.

The argument is not refuted by defendant since there is no dispute as to the complainants' superior right to the proceeds at the time of the fire loss. Indeed, complainants exercised their right to the proceeds by endorsing the insurance check to defendant's agent.

It seems now that the only issue stems from the alleged agreement between the trustee and defendant's agent as to the application of the insurance funds. Complainants alleged that the trustee entrusted the funds to defendant's agent for the exclusive purpose of repairing fire damage to the hotel, but that only a small fraction was so used; and that the repairs made by defendant were wholly inadequate. It was further alleged that the difference between the proceeds received and that necessary to repair the damage had been expended to maintain the operation of the hotel.

It is stated in Vol. 59 C.J.S. Mortgages sec. 328, pp. 452, 453 that the disposition or application of proceeds of insurance on mortgaged property may be controlled by an agreement between the mortgagor and mortgagee. It is also stated that such proceeds cannot

be appropriated to the payment of other debts of a mortgagor unless by express authority or consent of both mortgagor and mortgagee. We consider these rules to be basically sound.

■ It is our opinion that if the alleged agreement with respect to the application of the funds can be proved, and the funds were not in fact devoted to the restoration of the premises, then there might be an actionable wrong.

Complainants' second assignment of error urges that the Chancellor erred in sustaining defendant's demurrer as to their claim for unpaid property taxes.

The deed of trust in this case contains a provision whereby the mortgagor agreed to "keep the property free from all taxes." In the event taxes did become delinquent, the mortgagees had the option of paying such taxes themselves.

■ The great weight of authority supports the view that a mortgagee who pays taxes to protect his interest in mortgaged premises, the mortgagor being under duty to pay them, is entitled to be reimbursed for the amount so paid. Numerous cases supporting this view are cited in annotations contained in 84 A.L.R., p. 1366 and 123 A.L.R., p. 1248.

■ It is universally recognized, however, that to be entitled to recover, the mortgagee must have paid such delinquent taxes so as to free the real property from lien. See Vol. 59 C.J.S. Mortgages sec. 325, pp. 441, 442, Note 57. Nowhere is it alleged that complainants have, themselves, paid these taxes. Complainants' second assignment of error is, therefore, overruled.

Defendant has relied upon certain equitable defenses, insisting that complainants are not entitled to equity's aid due to their alleged condonation of and participation in the actions of which they now complain. In our view these defenses are without either application or merit.

It follows that the decree of the Chancellor below is affirmed in part and reversed in part, and the cause remanded to the Chancery Court of Hamilton County for further proceedings to determine what part, if any, of the insurance proceeds were misapplied; that is, contrary to the alleged understanding that such insurance proceeds would be devoted to repair of the fire damage. Costs of this appeal are assessed one-half against the appellee, Morris R. Dewoskin, dba M. R. Dewoskin & Company, and one-half against appellants.

DYER, CHIEF JUSTICE, McCANLESS, JUSTICE, and JENKINS and BOZEMAN, SPECIAL JUSTICES, concur.