460 S.E.2d 627

Joseph C. JONES and Debra S. Jones,
Plaintiffs Below, Appellees,

v.

WESBANCO BANK PARKERSBURG,
Intervening Plaintiff Below,
Appellant,

v.

MOTORISTS MUTUAL INSURANCE
COMPANY, Defendant Below,
Appellee.

No. 22517.

Supreme Court of Appeals of
West Virginia.

Submitted May 3, 1995.

Decided Filed July 14, 1995.

Ronald W. Musser, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, for appellant, Wesbanco Bank Parkersburg.

Diana Everett, Ruley & Everett, Parkersburg, for appellee, Motorists Mut.

McHUGH, Chief Justice:

In this appeal from the Circuit Court of Wood County, West Virginia, appellant Wesbanco Bank Parkersburg (hereinafter "Wesbanco") seeks a determination from this Court that, as the named mortgagee on a certain homeowners insurance policy, it suffered a loss as of the date of the fire that destroyed the collateral real estate even though the mortgagors continued to make monthly payments on the mortgage debt for approximately two years and seven months after the date of the fire. Wesbanco further appeals the circuit court's ruling that Wesbanco failed to establish a prima facie case of bad faith against the insurer, appellee Motorists Mutual Insurance Company.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, the order of the circuit court is affirmed, in part, reversed, in part, and this case is remanded.

I.

On or about September 1, 1989, Joseph C. and Debra S. Jones purchased a homeowners insurance policy from appellee Motorists Mutual Insurance Company (hereinafter "Motorists Mutual"). The insurance policy, which covered Mr. and Mrs. Jones' residence as well as their personal property, listed Mountain State Bank, now Wesbanco, as mortgagee.[1]

---

1. Though Wesbanco was listed on the policy as a mortgagee, it was actually the lender for which a deed of trust was executed to secure payment of the loan. *Firstbank Shinnston v. West Virginia*

On February 8, 1990, a fire occurred at Mr. and Mrs. Jones' residence, causing substantial damage. Mr. and Mrs. Jones subsequently sought to recover the full limits of the policy for the following: $42,000 for the dwelling; $29,400 for personal property; and $4,200 for other structures. Motorists Mutual denied coverage for the loss pursuant to policy provisions found in Section I—Perils Insured Against, which state:

> We insure against risks of direct loss to property described in Coverages A [Dwelling] and B [Other Structures] only if that loss is a physical loss to property[.]
>
> . . . .
>
> We insure for direct physical loss to the property described in Coverage C [Personal Property] caused by a peril listed below unless the loss is excluded in Section I—Exclusions.

Section I—Exclusions provides, in pertinent part:

> 1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> . . . .
>
> **h. Intentional Loss,** meaning any loss arising out of any act committed;
>
> (1) by or at the direction of an **insured;** and
>
> (2) with the intent to cause a loss.

Motorists Mutual thus denied coverage to Mr. and Mrs. Jones based upon their alleged intentional acts in causing the fire.

On May 30, 1990, Mr. and Mrs. Jones filed a complaint in the Circuit Court of Wood County seeking recovery under the aforementioned insurance policy. Mr. Jones was subsequently tried and convicted of arson while Mrs. Jones was acquitted.

It was not until November of 1990, approximately nine months after the fire, that Wesbanco learned that the property securing the Jones' loan had been destroyed. In that Mr. and Mrs. Jones, or someone on their behalf, had continued making the monthly payments on the loan from and after the date of the fire, it is unclear as to precisely how Wesbanco learned of the fire loss. In any event, according to Wesbanco, it immediately contacted Motorists Mutual's regional and home offices in an attempt to collect payment under the mortgage clause of the policy, which provides:

> The word 'mortgagee' includes trustee.
>
> If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
>
> If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
>
> a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
>
> b. pays any premium due under this policy on demand if you have neglected to pay the premium; and
>
> c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
>
> If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.
>
> If we pay the mortgagee for any loss and deny payment to you:
>
> a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
>
> b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Insurance Co., 185 W.Va. 754, 758, 408 S.E.2d 777, 781 (1991). However, we have previously stated that "a deed of trust is in effect a mortgage, the primary difference being the manner in which it is foreclosed." Id. See Young v. Sodaro, 193 W.Va. 304, 456 S.E.2d 31 (1995).

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

In April 1991, Wesbanco completed and returned to Motorists Mutual a sworn proof of loss form. When Motorists Mutual failed to adequately respond to its claim, Wesbanco, in July 1992, filed a complaint as an intervening plaintiff in the aforementioned civil action instituted by Mr. and Mrs. Jones. Wesbanco's complaint alleged (1) that it was owed payment under the insurance policy from the date of the fire loss and (2) that Motorists Mutual acted in bad faith in refusing to pay Wesbanco the sum to which it was entitled under the policy.

In its answer to Wesbanco's complaint, Motorists Mutual maintained, *inter alia,* that Wesbanco had sustained no loss as a result of Motorists Mutual's refusal to pay under the insurance policy in that the loan indebtedness owed to Wesbanco by Mr. and Mrs. Jones had been timely discharged, even as of the date Wesbanco's complaint was filed, since the date of the fire.

Wesbanco subsequently filed a motion for summary judgment seeking, *inter alia,* payment under the insurance policy in the amount of the debt owed to it by Mr. and Mrs. Jones as of the date of the fire. In its response to Wesbanco's motion for summary judgment, Motorists Mutual again argued that Wesbanco had sustained no loss, considering the debt had continued to be timely discharged. In its supplemental response to Wesbanco's motion for summary judgment, Motorists Mutual asserted, for the first time, that the insurance policy at issue contained a loss payable, or open mortgage clause, which precluded Wesbanco from recovering there-

under due to the misconduct of the insured, Mr. Jones, who had previously been convicted of arson.

Following a hearing on March 24, 1993, Wesbanco's motion for summary judgment was denied. The circuit court ruled, in an order dated April 19, 1993, that the insurance policy at issue contained an open mortgage clause, "and further that the subject policy specifically excludes any loss caused by the intentional conduct of an insured, which renders the mortgage clause inapplicable under its express provisions[.]" [2]

Wesbanco subsequently requested that the circuit court reconsider its order denying its motion for summary judgment. Wesbanco's request was denied.

On October 8, 1993, Motorists Mutual filed a motion for summary judgment against both Mr. and Mrs. Jones and Wesbanco. In a letter to the parties, the judge indicated that, upon review of Wesbanco's response to Motorists Mutual's motion for summary judgment, he had concluded that, notwithstanding the arson conviction of Mr. Jones, Motorists Mutual was obligated to Wesbanco in that the insurance policy at issue was "obviously intended to have the same effect ... [as] a 'standard mortgage clause.'" [3] By order dated October 27, 1993, the circuit court granted Motorists Mutual's motion for summary judgment as to Mr. and Mrs. Jones, at which time, approximately two years and seven months after the date of the fire, Mr. and Mrs. Jones ceased making the monthly loan payments to Wesbanco. The October 27, 1993 order further directed that the case remain upon the docket pending resolution of Wesbanco's claims.

---

**2.** This case was originally heard by the Honorable Arthur N. Gustke. Upon Judge Gustke's retirement, the Honorable George W. Hill became the presiding judge. According to a March 26, 1993 letter written to the parties by Judge Hill, certain documents written by the parties had not been available to him at the March 24, 1993 hearing on Wesbanco's motion for summary judgment. Though Judge Hill had indicated at the March 24 hearing that he would grant Wesbanco's motion for summary judgment, his March 26, 1993 letter, apparently written upon review of these documents, stated otherwise. Indeed, by order of April 19, 1993, Wesbanco's motion was denied.

**3.** In the October 22, 1993 letter, the circuit court judge determined that

> while the language of the subject insurance policy is not *precisely* the same as that considered by the court in ... *Firstbank Shinnston* [*v. West Virginia Insurance Co.,* 185 W.Va. 754, 408 S.E.2d 777 (1991)] and *Fayetteville Building and Loan* [*Ass'n v. Mutual Fire Ins. Co. of West ·Virginia,* 105 W.Va. 147, 141 S.E. 634 (1928)] ... it is substantially the same and is obviously intended to have the same effect, thereby creating a 'standard mortgage clause.'

On November 16, 1993, Wesbanco renewed its motion for summary judgment. By order dated March 1, 1994, the circuit court, *inter alia*, required Motorists Mutual to pay to Wesbanco "an amount equal to the current unpaid principal of the loan at issue, together with accrued but unpaid interest, said sum to be established by an affidavit to be submitted by [Wesbanco]."[4] (footnote added). The court further found that considering

> that the lien of [Wesbanco] continued to be discharged by [Mr. and Mrs. Jones] subsequent to the loss alleged in the Complaint, that said payments remained current during the pendency of the action, that the Intervening Complaint was filed, pursued and prosecuted at a time when such payments to [Wesbanco] remained current, and that this Court, by Order entered April 20, 1993, had denied [Wesbanco's] Motion for Summary Judgment against [Motorists Mutual,]

Wesbanco failed to establish a prima facie case of bad faith against Motorists Mutual, as alleged in Count II of the complaint.

It is from the circuit court's March 1, 1994 order that Wesbanco now appeals.

## II.

In syllabus points one and two of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court held:

> 1. A circuit court's entry of summary judgment is reviewed *de novo*.

> 2. ' "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Our *de novo* review of the circuit court's disposition of this case on summary judgment reveals that there was no genuine issue of fact to be tried nor was an inquiry into the facts desirable to clarify application of the law. Accordingly, though summary judgment was appropriate in this case, it was improperly granted in favor of Motorists Mutual.

## III.

The first issue on appeal is whether Wesbanco, the lender under a deed of trust named as mortgagee on the homeowner's insurance policy, suffered a loss under the express terms of the policy as of the date of the fire even though the insureds, or someone on their behalf, continued to make monthly loan payments to Wesbanco for approximately two years and seven months after the date of the fire. It is Motorists Mutual's contention, and the circuit court agreed, that Wesbanco suffered no loss until the date Mr. and Mrs. Jones ceased making payments on the loan.

Our analysis begins with our determination of whether the insurance policy purchased by Mr. and Mrs. Jones contained a standard mortgage clause or an open mortgage clause. In light of the misconduct of the insureds, our resolution of this threshold issue is significant, as it will determine if Wesbanco, as the lender under a deed of trust named as mortgagee on the policy, was entitled to payment of the insurance proceeds at all.

Under a New York standard or union mortgage clause, "there are two separate and distinct contracts of insurance created ... one with the owner of the property and one with the mortgagee." *Firstbank Shinnston v. West Virginia Insurance Co.*, 185 W.Va. 754, 759, 408 S.E.2d 777, 782 (1991). (citations omitted). The "mortgagee has an independent contract with the insurer which can not be defeated by improper or negligent acts of the mortgagor." 5 George J. Couch, et al., *Couch on Insurance 2d* § 29:65 (1984) (footnote omitted). *See Firstbank Shinnston, supra; Valley National Bank of Arizona v. Insurance Company of North America*, 172 Ariz. 212, 836 P.2d 425 (App.1992); *Pacific Insurance Company of New York v.*

---

4. Prior to entry of this order, a check in the amount of $11,604.91 was tendered from Motorists Mutual to Wesbanco in satisfaction of the unpaid principal of the loan, plus interest, from October 31, 1993, the date Mr. and Mrs. Jones ceased making payments thereon.

*R.L. Kimsey Cotton Co., Inc.,* 114 Ga.App. 411, 151 S.E.2d 541 (1966); *Grange Mutual Casualty Co. v. Central Trust Co.,* 774 S.W.2d 838 (Ky.Ct.App.1989); *Talman Federal Savings & Loan Ass'n v. American States Insurance Co.,* 468 So.2d 868 (Miss. 1985). The standard mortgage clause affords the mortgagee "the same protection as if it had taken out a separate policy." *Firstbank Shinnston,* 185 W.Va. at 759, 408 S.E.2d at 782 (citations omitted).

In distinct contrast, under an open mortgage, or loss payable clause, the mortgagee's rights are totally derivative of the mortgagor's. Thus, such clause does not "operate as a separate contract between the mortgagee and the [insurance] company; but the policy remains one between the company and the owner, with a right of collection vested in the mortgagee by appointment." 5A John Alan Appleman and Jean Appleman, *Insurance Law and Practice* § 3401 at p. 285 (1970) (footnote omitted). Unlike the designated mortgagee in a standard mortgage clause, the mortgagee in an open mortgage clause is:

'[A] mere appointee to receive the proceeds to the extent of his interest ... dependent upon the existence of an insurable interest in such appointee ... it makes the policy subject to any act or omission of the insured which might void, terminate, or adversely affect the coverage; and if the policy is not collectible by the insured, the appointee, likewise, cannot recover thereunder.'

*Valley National Bank of Arizona v. Insurance Co. of North America,* 172 Ariz. 212, 215, 836 P.2d 425, 428 (App.1992) (*citing* 5A Appleman, *supra* at § 3335). Significantly, a clause is construed to be an open mortgage clause "where it directs the insurer to pay

the proceeds of the policy to the named payee 'as his interest may appear' and *contains no other provision protecting the payee's rights against breach of the insurance contract by the insured." St. Louis County National Bank v. Maryland Casualty Co.,* 564 S.W.2d 920, 928 (Mo.Ct.App.1978) (citation omitted and emphasis added). Moreover, while the mortgagee is the named payee of the proceeds, "*there are no other provisions in his favor.*" *Id.* (citations omitted and emphasis added).[5]

Considering the aforementioned principles and the fact that our legislature has prescribed "the New York Standard as an exclusive form of fire insurance policy to be used in this State," *Kirk v. Firemen's Insurance Co., of Newark, N.J.,* 107 W.Va. 666, 668, 150 S.E. 2 (1929), we conclude that the mortgage clause in the Jones' policy is a standard mortgage clause.[6] *See Meadows v. Employers' Fire Insurance Co.,* 171 W.Va. 337, 298 S.E.2d 874 (1982). *W.Va.Code,* 33–17–2 [1957] provides, in relevant part, that

[n]o policy of fire insurance covering property located in West Virginia shall be made, issued or delivered unless it conforms·as to all provisions and the sequence thereof with the basic policy commonly known as the New York standard fire policy, edition of one thousand nine hundred forty-three, which is designated as the West Virginia standard fire policy; except that with regard to multiple line coverages providing casualty insurance combined with fire insurance this section shall not apply if the policy contains, with respect to the fire portion thereof, language at least as favorable to the insured as the applicable portions of the standard fire policy and such multiple line policy has been approved by the commissioner.

**5.** In the cases of *Wunschel v. Transcontinental Insurance Co.,* 17 Kan.App.2d 457, 839 P.2d 64, 65 (1992) and *Northwestern National Casualty Co. v. Khosa, Inc.,* 520 N.W.2d 771, 773 (Minn. Ct.App.1994), for instance, the following insurance policy provisions were deemed open mortgage clauses:

  A. Loss Payable

    For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

    1. Adjust loss with you; and

    2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**6.** *See* 5 Couch, *supra* at § 29:67 at 347 ("where a statute provides that fire policies shall contain a standard New York mortgage clause, fire policies are regarded as containing such clause and the rights of the mortgagee are fixed accordingly[.]")

Lines 68 through 85 of the New York Standard Fire Policy (statutorily designated the West Virginia Standard Fire Policy) provide:

### Mortgagee Interests and Obligations

If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

*If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery,* but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgage may be added hereto by agreement in writing.

(emphasis added).

Under the basic standard mortgage language cited above, the rights of a lender under a deed of trust of property located in West Virginia which is named as mortgagee in a policy of fire insurance are independent of the insured's claim under the policy and are not defeated by the insured's conduct. *See Northwestern National Casualty Co. v. Khosa, Inc.,* 520 N.W.2d 771, 774 (Minn.Ct. App.1994) ("If ... no liability existed as to the mortgagor ... to the extent of payment of loss to the mortgagee[.]"). The mortgage clause in the Jones' policy clearly adheres to the mandates of *W.Va.Code,* 33–17–2 [1957] and the corresponding requirements of the New York Standard Fire Policy adopted in West Virginia.

The mortgage clause at issue states, in pertinent part, that if Motorists Mutual "den[ies] [the insureds'] claim, that denial *will not apply to a valid claim of the mortgagee,* if the mortgagee" fulfills three requirements specifically set forth in that provision. The mortgage clause further imposes upon Motorists Mutual certain obligations if it "pay[s] the mortgagee for any loss and den[ies] payment to [the insureds][.]" This policy language clearly indicates that Wesbanco's rights thereunder are not dependent upon the insureds' right to recover. Thus, despite Mr. Jones' conviction of arson, which precluded recovery under the policy, Wesbanco's rights, as the lender under a deed of trust named as mortgagee, are not disturbed.[7]

### IV.

Having concluded that the mortgage clause in this case is a standard mortgage clause,[8] we must now determine whether Wesbanco was entitled to the policy proceeds as of the date of the fire even though monthly payments on the loan were timely discharged from and after the date of the fire. For the reasons discussed herein, we conclude that Wesbanco was entitled to payment of the insurance proceeds as of the date of the fire.

As indicated in syllabus point one of *Firstbank Shinnston, supra,* under a standard mortgage clause, the lender under a deed of trust named as mortgagee is entitled to insurance proceeds to the extent that they are equal to the debt owed by the property owner:

If a fire insurance contract between an insurer and a property owner includes a

---

7. Contained in the record in this case are documents entitled the Fire Casualty and Surety Bulletin published by the National Underwriter Company. These documents were attached as exhibits to Wesbanco's October 8, 1993 memorandum in opposition to Motorists Mutual's motion for summary judgment against it and Mr. and Mrs. Jones. Significantly, the bulletin's discussion of the standard mortgage clause included policy language identical to that which is contained in the mortgage clause in the Jones' policy. Such language is obviously considered in the insurance industry to be a standard mortgage clause. The circuit court was apparently persuaded by this evidence, as are we.

8. Our conclusion that the mortgage clause in question is a standard mortgage clause resolves Motorists Mutual's contention in its cross-assignment of error that it is an open mortgage clause.

standard mortgage clause naming as mortgagee the lender under a deed of trust executed by the property owner to secure a debt owing on the property, the lender under the deed of trust pursuant to that clause has an independent and distinct contract with the insurer, as if the lender under the deed of trust had taken out a separate policy with the insurer, and is deemed to be an insured to the extent of the balance due it from the property owner.

See *Brown v. Frankenmuth Mutual Insurance Co.*, 187 Mich.App. 375, 468 N.W.2d 243, 247 (Mich.Ct.App.1991). Indeed, the purpose of a standard mortgage clause in an insurance policy "is to indemnify the mortgagee against the diminution of the value of the security for his loan due to loss from certain perils and thereby to make certain that in the event of such a loss, the mortgagee would be protected up to the amount of his lien." *Citizens Savings and Loan Ass'n of New York v. Proprietors Insurance Co.*, 78 A.D.2d 377, 435 N.Y.S.2d 303, 306 (1981) (citation omitted). See *Lutheran Brotherhood v. Hooten*, 237 So.2d 23, 24 (Fla.Dist.Ct. App.1970) ("The reason that mortgagees require mortgagors to obtain insurance on the mortgaged premises is to provide additional security for the debt.")

■ Under a standard mortgage clause, the right of a lender under a deed of trust named as mortgagee to the insurance proceeds becomes vested at the time of the fire damage to the extent of the balance due on the debt. *Federal National Mortgage Ass'n v. Prudential Property and Casualty Ins. Co.*, 517 So.2d 201, 206 (La.Ct.App.1987). See *Rosenbaum v. Funcannon*, 308 F.2d 680 (9th Cir.1962); *Norfolk & Dedham Mutual Fire Ins. Co. v. Schlehuber*, 327 So.2d 891 (Fla.Dist.Ct.App.1976); *Georgia Farm Bureau Mutual Insurance Co. v. Brewer*, 202 Ga.App. 127, 413 S.E.2d 770 (1991). In the syllabus of *Pacific Insurance Company of New York v. R.L. Kimsey Cotton Co., Inc.*, 114 Ga.App. 411, 151 S.E.2d 541 (1966), the Georgia Court of Appeals held that "[u]nder a New York Standard mortgage clause in a fire insurance contract, the liability of the insurer to a mortgagee loss payee is to be determined by the rights of the mortgagee at the time of the fire."

In *Grange Mutual Casualty Co. v. Central Trust Co., N.A.*, 774 S.W.2d 838 (Ky.Ct.App. 1989), after fire damaged the mortgaged premises, the insurance company denied the mortgagors' claim for fire insurance proceeds because the fire had been intentionally caused by one of the mortgagors. Though the named mortgagee on the policy had timely filed a proof of loss claim with the insurance company, its claim was denied for the reason that, by the time the insurance company had completed its investigation of the fire loss, the mortgagor had rebuilt the premises to the condition as it existed prior to the fire.

Recognizing that a standard mortgage clause "operates as a distinctive and separate contract between the insurer and the mortgagee[,]" *Id.* at 839 (citations omitted), the court in *Grange Mutual* reasoned that

[t]he right of the mortgagee under a standard mortgage clause *is not dependent upon his sustaining loss.* That is, the mortgagee under such a clause acquires a right to the insurance proceeds *even though he suffers no actual loss,* as when the building was restored to its former condition by the mortgagor. *Couch on Insurance,* 2d (Red. ed.) § 42:730. The bank had an insurable interest in the property and the insurance company agreed to insure it against a loss by fire, and a loss occurred. *The contingency contemplated by the contract has, therefore, arisen (on the date of the fire loss) and the company is bound to pay the amount of the damage. . . . The time of the fire and of the loss established the rights of the parties and the amount of the loss payable to the mortgagee became fixed as of that time.*

*Id.* at 846 (emphasis added). See *Savarese v. Ohio Farmers' Insurance Co. of LeRoy, Ohio,* 260 N.Y. 45, 182 N.E. 665 (1932).

Similarly, in *Talman Federal Savings & Loan Ass'n v. American States Insurance Co.,* 468 So.2d 868 (Miss.1985), wherein the insurance company argued that the mortgagee had not suffered a "loss" because the insured rebuilt the destroyed property a year later, the court found the "loss" envisioned in

the insurance policy is the date of the event on which the claim is made. *Id.* at 874. The "loss" was to be neither determined nor affected by events, such as the rebuilding of the premises, transpiring over a year after the fire. *Id.*

In *Lutheran Brotherhood,* 237 So.2d 23, a mortgagee both foreclosed and obtained a deficiency judgment against the mortgagors after fire destroyed the secured property. The court found that the mortgagee's right to recover under the fire insurance policy became fixed at the time of loss and that, significantly, "[t]his right could not be lost until the *entire* debt was satisfied *in full.*" *Id.* at 24 (emphasis added and citation omitted). *See Rosenbaum v. Funcannon,* 308 F.2d 680, 684 (9th Cir.1962) ("Only to the extent that the mortgagee receives payment upon the debt through the foreclosure is the debt itself extinguished.").

We recognize the facts in the aforementioned cases to be distinguishable from the unique element which exists in the case before us, that is, the continued payment to Wesbanco on the loan following destruction of the secured premises. Nevertheless, we find their reasoning to be persuasive.

Wesbanco's right to recover under the insurance policy became fixed at the time of the fire. This right could not be lost until the *entire* debt was satisfied in full. Accordingly, the continued monthly payment on the debt did not bar Wesbanco from collecting the entire debt owed it, as of the date of the fire, because it was only the satisfaction of the entire debt which would have precluded Wesbanco's claim to the insurance proceeds.

The record reveals that Wesbanco did not learn of the February 8, 1990 fire until November 1990. During that seven-month period, monthly payments on the loan were made thereby extinguishing part of the debt. Under the insurance policy, Wesbanco was entitled to the balance of the debt, as of the date of the fire, less that amount paid by or on

behalf of Mr. and Mrs. Jones from and after the date of the fire.[9]

■ Accordingly, we hold that where the lender under a deed of trust executed by a property owner to secure a debt owing on the property is named as mortgagee in a standard mortgage clause in a fire insurance contract between an insurer and a property owner, it has an independent and distinct contract with the insurer and is deemed to be an insured to the extent of the balance due it from the property owner. Thus, the right of the lender under a deed of trust named as mortgagee to the insurance proceeds is determined at the time of the fire loss to the extent of the balance due it from the property owner.

## V.

The final issue raised by Wesbanco on appeal is that the circuit court erred in denying its bad faith claim against Motorists Mutual for its refusal to pay to Wesbanco the fire insurance proceeds and to satisfy the mortgage debt as of the date of the fire. Considering our resolution of the first assignment of error, we agree with Wesbanco's contention insofar as the circuit court's ruling denied its claim for reasonable attorneys' fees.

■ In syllabus point one of *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986), we held that an insured who substantially prevails in a suit against its insurer is entitled to reasonable attorneys' fees:

> Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience.

9. Contrary to the assertions of Motorists Mutual, the record reveals that Wesbanco has never attempted a double recovery of the debt owed it, but has maintained that it was entitled only to the balance of the loan, including interest. Indeed, the sum ultimately paid to Wesbanco once the monthly loan payments ceased in October

1993 was the balance of the debt as of that date. Thus, considering that the debt owed to Wesbanco had been satisfied, our holding that it was entitled to the fire insurance proceeds as of the date of the fire is significant to Wesbanco insofar as it is also entitled to reasonable attorneys' fees. *See* discussion, *infra.*

See syl. pt. 3, *Firstbank Shinnston, supra.* See also *Hadorn v. Shea,* 193 W.Va. 350, 456 S.E.2d 194 (1995). This holding in *Hayseeds* was substantially based upon the premise that whether an insurer's refusal to pay an insured's claim was in good faith or bad faith is of little relevance " 'once it has been established that the insurer breached its contract with its insured.' " *Hayseeds, Inc.,* 177 W.Va. at 329, 352 S.E.2d at 79 (*quoting Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 194–95, 342 S.E.2d 156, 160 (1986)).

In *Firstbank Shinnston,* 185 W.Va. at 762, 408 S.E.2d at 785, we found the aforementioned reasoning equally applicable to a lender under a deed of trust named as mortgagee under a standard mortgage clause, considering that there is an independent contract of insurance which exists between it and the insurer. Thus, in that Wesbanco is deemed an insured to the extent of the balance due it from Motorists Mutual, it should be compensated for the costs it incurred in compelling Motorists Mutual to honor its contractual obligation. *Id.*

Having concluded that Wesbanco was entitled to the fire insurance proceeds as of the date of the fire, we hold that it has substantially prevailed in its suit against Motorists Mutual. Wesbanco is, therefore, entitled to recover its reasonable attorneys' fees which are to be determined, on remand, by the circuit court.

### VI.

For reasons discussed herein, we hereby affirm the order of the Circuit Court of Wood County insofar as it found the mortgage clause in the Jones' fire insurance policy to be a standard mortgage clause. However, we reverse that portion of the circuit court's order which found that Wesbanco was entitled to payment under the insurance policy as of the date payments on the loan ceased and further, we reverse the circuit court's denial of Wesbanco's claim for reasonable attorneys' fees. This case is therefore remanded for determination of reasonable attorneys' fees incurred by Wesbanco.

Affirmed, in part; reversed, in part; and remanded with directions.

BROTHERTON and RECHT, JJ., did not participate.

MILLER, Retired J., and CLECKLEY, J., deeming themselves disqualified, did not participate.

FOX, SPAULDING and RANSON, JJ., sitting by temporary assignment.