UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT H. O'CONNOR, SR.;
CATHLEEN B. O'CONNOR,
<u>Plaintiffs-Appellants,</u>

v.

No. 97-1321

CUSTARD INSURANCE ADJUSTERS,
INCORPORATED; GULF INSURANCE
COMPANY,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-95-54)

Submitted: February 17, 1998

Decided: April 3, 1998

Before MURNAGHAN, ERVIN, and HAMILTON, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John G. Trimpi, Elizabeth City, North Carolina, for Appellants. Tyrus
V. Dahl, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE,
Winston-Salem, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Robert and Cathleen O'Connor are the owners of the Ocean Aire Motel in Rodanthe, North Carolina. They appeal the district court's order granting the Defendants' motion for summary judgment holding that the O'Connors did not have standing to sue to recover on an insurance claim on the property. The parties submitted a joint motion to submit this case on briefs, which we granted. Finding no error, we affirm.

The East Carolina Bank of Englehard, North Carolina, held the mortgage on the O'Connors' motel property. The bank had an established policy to carry blanket mortgage insurance policies to protect the Bank's interest in its mortgaged properties to the extent that its mortgagors did not carry hazard insurance. The O'Connors' motel was covered by the Bank's policy with Gulf Insurance Company (Gulf) with a limit of $175,000. On August 31, 1993, Hurricane Emily struck the Outer Banks of North Carolina. A few days later the O'Connors reported property damage from the storm to Gulf.

Gulf employed defendants Custard Insurance Adjusters (CIA) to investigate and adjust the claim. Both the O'Connors and Gulf complain that there was much conflict in adjusting the claim. The O'Connors claimed that the amount of loss exceeded the policy limits and demanded settlement of the claim at the $175,000 policy limit. Gulf determined an undisputed actual cash value loss of $90,294.11, minus a $500 deductible, and in March 1994, issued a check for $89,794.11, payable jointly to East Carolina Bank and Robert O'Connor. The Bank applied the payment to the principal on the mortgage. After payment on the undisputed loss, Gulf continued to investigate the claim. The O'Connors became increasingly agitated at the handling of the claim by Gulf and CIA and issued a demand letter threatening suit. Gulf chose to decline the demand. After several

2

exchanges between the parties' attorneys, the O'Connors filed suit in August 1995 for the remaining amount of alleged loss.

The O'Connors sought the balance of the alleged loss of approximately $85,000 under a breach of contract theory. The O'Connors also sought relief for unfair settlement and trade practices arising out of conduct and representations made by or attributable to Gulf and CIA. Gulf and CIA raised several affirmative defenses to the action, including an assertion that the O'Connors were not additional insurers under the Gulf policy with the Bank and therefore had no standing to prosecute this claim against Gulf and CIA. The district court granted Gulf's and CIA's motions for summary judgment and dismissed the action. The O'Connors timely noted an appeal. We review the district court's grant of summary judgment de novo. See Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990).

Under the insurance agreement, "[t]he mortgagor of property covered by this policy shall be considered an additional insured as respects any residual amounts of insurance over and above the financial institution's interest in said property." So, to the extent that the amount owed to the Bank on the date of loss was less than $175,000, the mortgagor would be an additional insured for any residual amount up to the policy limit of $175,000.

On the date of loss, the O'Connors owed East Carolina Bank $186,032.17, approximately $11,000 over the policy limit. Therefore, at the time the property sustained damage from the storm, the O'Connors were not additional insurers. During the course of the troubled claim adjustment proceedings, Gulf elected to negotiate the claim only with the Bank. After Gulf made this election, the O'Connors paid the loan indebtedness in full by September 1994. The O'Connors argue that they have standing to proceed against Gulf and CIA. They contend that when they paid the balance of the mortgage, they became additional insurers under the policy. They claim to be successors in interest to the Bank for the full $175,000 policy limit, minus the amount already paid on the claim.

While there is no published law on point from the State of North Carolina, the fundamental premise of insurance law is that the rights to insurance proceeds as between mortgagor and mortgagee are fixed

3

as of the date of loss. The fact that a mortgage was later satisfied, after the date of loss, does not affect the right to recovery. That right remains fixed. See Norfolk & Dedham Mut. Fire Ins. Co. v. Schlehuber, 327 So. 2d 891, 892 (Fla. App. 1976) (citing Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co. 270 N.E.2d 694 (N.Y. 1971)). See also Giberson v. First Fed. Sav. & Loan Ass'n , 329 N.W.2d 9, 11 (Iowa 1983) (holding that the interests of the mortgagor and mortgagee under an insurance policy are determined as of the date of loss); Law v. Dewoskin, 447 S.W.2d 361, 363 (Tenn. 1969) (same). The O'Connors do not cite any cases to dispute this well settled proposition.

The O'Connors point to language in Whitestone suggesting that a mortgagee can "impair" its rights after the date of loss through waiver, estoppel, assignment, or discharge of debt. However, the Bank did not impair its rights in any of the ways suggested by the O'Connors. First, the O'Connors cite Jones v. Wesbanco Bank Parkersburg, 460 S.E.2d 627 (W. Va. 1995), to support their argument that their post-loss satisfaction of the mortgage grants them a right to recover on the policy. In Jones, the court held that the right to insurance proceeds is determined at the time of the loss. The plaintiffs in Jones, unlike the O'Connors, were insured before the date of loss. The issue in Jones was whether, under a standard mortgage clause, the mortgagee had the equivalent of an independent contract with the insurance company so that it would not be bound by an arson exclusion which precluded a claim by the mortgagor. The court's holding that a mortgagee's right to proceeds after the debt was satisfied is inapplicable because the terms of the policy and the circumstances surrounding the claim are completely distinguishable. See Jones, 460 S.E.2d at 634-35.

The O'Connors next argue that there was an implied assignment of any and all rights to proceed against the insurance carrier. As support, the O'Connors cite Barbee v. Edwards, 77 S.E.2d 646 (N.C. 1953). Barbee holds that once a mortgage is satisfied, all outstanding interests in the land revert immediately to the mortgagor by operation of law. See Barbee, 77 S.E.2d at 649. This principle does not support an argument for implied assignment. Further, Barbee is a quiet title action and does not discuss insurance policies or rights to proceeds from a policy.

4

Finally, the O'Connors contend that Gulf is estopped from asserting that the O'Connors were not insured. The O'Connors state that because Gulf and CIA dealt with them extensively for approximately one year before electing to negotiate only with the Bank, Gulf and CIA treated them as insured under the policy. This argument does not demonstrate that Gulf intended to treat the O'Connors as insured. It was necessary for Gulf and CIA to interact with the O'Connors in order to assess the amount of loss. Because the O'Connors were owners of the motel and had information known exclusively to them regarding the loss, Gulf and CIA had no alternative but to discuss with them the amount of loss.

We therefore affirm the district court order.

AFFIRMED

5